IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2009

**STATE OF TENNESSEE v. STEVEN WATSON**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-02908    James M. Lammey, Jr., Judge**

_____

**No. W2008-00452-CCA-R3-CD  - Filed August 6, 2009**

_____

The defendant, Steven Watson, was convicted by a Shelby County jury of aggravated assault, a Class C felony, and sentenced to a term of six years. He was ordered to serve six months in the Shelby County Correctional Center, with the balance of his sentence on probation. The defendant was also ordered to pay $8800 in restitution to the victim. On appeal, the defendant has raised five issues for review: (1) whether the evidence is sufficient to support the conviction; (2) whether the trial court erred in allowing the defendant to be questioned regarding a sixteen-year-old prior conviction; (3) whether the court erred in its application and weighing of enhancing and mitigating factors; (4) whether the court erred in denying the defendant's request for full probation; and (5) whether the court erred by ordering restitution in the amount of $8800 be paid to the victim without proof of his medical bills or lost wages. Because of an untimely filed motion for new trial, the defendant has waived review of his evidentiary issue regarding the prior conviction. After review, we conclude that the evidence is sufficient and that the sentence imposed, with regard to length and manner of service, is proper. With regard to the order of restitution, we conclude that, while the amount of restitution ordered was properly established, remand is necessary for a determination of the defendant's ability to pay as required by statute. The judgment of conviction and sentence are affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Remanded in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. McLIN and CAMILLE R. McMULLEN, JJ., joined.

Coleman Garrett and Michael Campbell, Memphis, Tennessee, for the appellant, Steven Watson.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lora Fowler and David Zak, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

The defendant and the victim, Robert Patterson, were involved in an altercation on October 22, 2005, which resulted in the defendant's conviction for aggravated assault. The victim, a self-employed electrician, had previously worked for the defendant in houses which he constructed and renovated as part of his community development corporation. The victim acknowledged that he had abused crack cocaine but stated that he never stole to support his drug habit.

At approximately 10:30 a.m., the defendant went to the victim's home to question him regarding ceiling fans and door knobs which had been stolen from a house the defendant was constructing in the neighborhood. The victim, at the defendant's request, went outside, where the defendant immediately accused the victim of stealing the items. The victim told the defendant he had no idea what he was talking about and turned to walk back inside the house. At this point, the defendant hit the victim in the head with his fist, and a scuffle between the two men ensued, with the defendant knocking the victim to the ground and kicking him. Eventually, the victim was able to grab a piece of wood lying in a flower bed and swung it at the defendant. After the two men stopped fighting, the defendant informed the victim that he had a witness who had seen the victim break into the defendant's property. The victim wanted to confront the witness, and he and the defendant rode to the house together in the defendant's truck.

Upon arriving at the property, the defendant and the victim entered the home and went into a back bedroom where Andrey Willett was painting. The victim asked the defendant where the witness was, and the defendant replied, "here's my witness," and proceeded to "crack" an aluminum baseball bat over the victim's head. The victim was momentarily knocked unconscious. Although Mr. Willett was in the room in which the incident occurred, he did not see the defendant use the bat on the victim as Mr. Willet's back was turned to the men. However, he heard the bat hit the victim and saw the defendant standing over the bleeding victim, who was lying on the floor. Mr. Willett got between the men and told the defendant not to hit the victim again.

After being helped up by Mr. Willet, the victim, bleeding heavily, walked back to his home. Once he arrived, he phoned the police to report what had occurred. The defendant had also called the police to report the break-in and theft of his property. Police first went to the defendant's property, and he informed the officers that he had gotten into an altercation with the man he believed responsible for the break-in and theft. While there, the officers were informed of the victim's report and went to his home to speak with him. Afterwards, the victim was taken to The Med by ambulance, where thirty-seven stitches were administered to close his head wound. He was also treated for two broken ribs, as well as injuries to his neck and back. Police investigating at the scene were unable to locate the bat used to hit the victim, despite both the victim's and Mr. Willett's informing them that one was used.

Based on the above facts, a Shelby County grand jury returned an indictment charging the defendant with aggravated assault by use of a deadly weapon. At a subsequent jury trial, the defendant testified in his own behalf and presented a theory of self-defense. According to the

defendant, he went to the victim's home to accuse him of the theft because the victim was a known drug user who had previously stolen from him. The defendant also stated that he had received a call in the early morning hours from a neighbor who stated that she had seen the victim behind the defendant's property, although she did not see the victim with anything. The defendant further testified that it was the victim who started the original altercation by attacking the defendant with a metal electrical box cover. He also testified that he believed that the defendant was high and drunk during the confrontation and that he retrieved the baseball bat from his truck during the confrontation to keep the victim from attacking him with a brick. He acknowledged carrying the bat into the house when he and the victim entered, but he testified that he only hit the victim when the victim rushed him after picking up a putty knife.

Following the presentation of evidence, the defendant was convicted as charged. The trial court subsequently sentenced the defendant as Range I, standard offender to six years, six months of which was to be served in jail and the balance on probation. The court also ordered that the defendant pay the victim $8800 in restitution for medical bills and lost wages. The judgment of conviction was entered by the trial court on December 14, 2007. Thirty-nine days later, on January 22, 2008, the defendant filed his motion for new trial. Following a hearing on the motion, the trial court entered an order denying the motion. This appeal follows.

**Analysis**

On appeal, the defendant has raised five issues for our review: (1) whether the evidence was sufficient to permit a rational trier of fact to find him guilty beyond a reasonable doubt; (2) whether the court erred in allowing the defendant's sixteen-year-old prior felony conviction to come into evidence during cross-examination; (3) whether the sentence imposed is excessive based upon improper application of enhancement factors and on improper weighing of enhancement and mitigating factors; (4) whether the court erred in denying the defendant's request for full probation; and (5) whether the court erred in ordering $8800 in restitution be paid to the defendant without proof of medical bills and lost wages. As an initial matter, the State has correctly noted that the defendant filed an untimely motion for new trial and asserts that, as a result, he has waived review of the evidentiary issue regarding the admission of his prior conviction. We agree.

Tennessee Rules of Criminal Procedure 33(b) states that:

> A motion for a new trial shall be made in writing, or if made orally in open court shall be reduced to writing, within thirty days of the date the order of sentence is entered. The Court shall upon motion allow amendment liberally until the day of the hearing on a motion for a new trial.

Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Thus, a trial court does not have jurisdiction to rule on a motion filed

outside the thirty-day period. *State v. Bough*, 152 S.W.3d 453, 460 (Tenn. 2004). Moreover, a trial judge's erroneous consideration of an untimely motion "does not validate the motion, and an appellate court will not consider the issues raised in the motion unless the issue or issues would result in the dismissal of the prosecution against the accused." *Dodson*, 780 S.W.2d at 780. Consequently, "[i]f a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing." *Id.* (citations omitted); *see also* Tenn. R. App. P. 3(e). Furthermore, this court lacks the authority to waive the untimely filing of a motion for new trial. *State v. Givham*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980); *see also* Tenn. R. App. P. 4(a).

As previously noted, the defendant's judgment of conviction was entered December 14, 2007. The record reflects that his motion for new trial was filed on January 22, 2008, thirty-nine days later. Thus, the motion was filed outside the requisite thirty-day period and is, therefore, untimely and a nullity. As such, the evidentiary issue raised by the defendant is waived, and the only issues which may be considered on appeal are sufficiency of the evidence and sentencing.

Although not argued by the State, with regard to review of those issues, we must also conclude that the notice of appeal document filed in this case was untimely. Rule 4(a) of the Tennessee Rules of Appellate Procedure requires the filing of a notice of appeal within thirty days of the entry of judgment or, pursuant to Rule 4(e), the entry of an order denying motion for new trial. Because the defendant's motion for new trial in this case was a nullity, it did not toll the thirty-day period for filing the notice of appeal. As such, the defendant had thirty days from entry of the judgment in this case to file his notice of appeal. The notice of appeal in this case was filed on February 25, 2008, well outside the thirty-day period which began to run on December 14, 2007. Thus, the appeal document in this case was also untimely. However, unlike the timely filing of a motion for new trial, the timely filing of a notice of appeal is not a prerequisite to the jurisdiction of this court, and this court may waive the requirement in the interest of justice. Tenn. R. App. P. 4(a). Waiver is not automatic and should only occur when "the interest of justice" mandates waiver of the requirement. *State v. Robert William Rockwell*, No. E2006-01717-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Aug. 13, 2007). In this case, we conclude that the interest of justice requires that we waive the timely filing of the notice of appeal in order to review the sufficiency of the evidence and the sentence imposed.

## I. Sufficiency of the Evidence

The defendant contends that the evidence presented at trial was insufficient to support a finding that he was guilty beyond a reasonable doubt. In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to

be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

On appeal, the defendant acknowledges that he "cannot argue to this Honorable Court that absolutely no evidence exists to support his conviction, [but] he submits that the record does not reasonably support the conviction . . . when properly viewed against the high standard of *Jackson v. Virginia*." This court has repeatedly held that *Jackson v. Virginia* addresses two important aspects of a sufficiency review on appeal: (1) the manner of review of the convicting evidence; and (2) the standard of review for legal sufficiency. The scope of our examination of the evidence is not equivalent to that of a jury. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or noncredible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that proof exists which supports the elements of the crime.

Pursuant to Tennessee Code Annotated section 39-13-101(a)(1) (2006), a person commits assault who "[i]ntentionally, knowingly or recklessly causes bodily injury to another." The assault is aggravated if a person intentionally or knowingly commits an assault as defined in section 39-13-101(a)(1) and, as relevant here, "[u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1) (2006). A deadly weapon is defined as "anything that in the manner of its use or intended use is capable of causing death or serious injury." T.C.A. § 39-11-106(a)(5) (2006).

In support of his argument that the evidence is not sufficient, the defendant asks us to rely upon information which was established only if the defendant's own testimony was believed, namely: (1) the victim had stolen from him on more than one occasion to support his drug habit; (2) the victim started the earlier altercation by hitting the defendant in the face with an electrical box cover; and (3) he only attacked the victim with the bat when he saw the victim grab a putty knife. His argument is essentially a challenge to the victim's credibility and a challenge to the jury's rejection of his self-defense theory. The victim testified in contradiction to each of the points relied upon by the defendant. The contradicting testimony was placed before the jury and, as is their

province, they accredited the testimony of the victim. As an appellate court, it is not our function to reweigh credibility determinations or conflicts in the evidence. *Pappas*, 754 S.W.2d at 623.

Review of the record establishes that the evidence, viewed in the light most favorable to the State, was sufficient to allow the jury to find the defendant guilty of aggravated assault beyond a reasonable doubt. The victim testified that he and the defendant, following an altercation at the victim's home, proceeded to the defendant's property which was under construction. Upon entering the house, the victim observed the defendant pick up a baseball bat. When the victim asked the defendant where the alleged witness was, the defendant responded "right here," and proceeded to swing the bat and hit the victim in the head, causing a wound which required thirty-seven stitches. We must conclude that this head wound, along with two broken ribs and various injuries to the victim's head and neck, was sufficient to establish bodily injury. Additionally, this court has previously held that a baseball bat may be a deadly weapon. *State v. Shane Delano Hunter*, No. M2007-01026-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 6, 2008); *State v. Shawn McCobb and Marcus Walker*, No. W2006-01517-CCA-R3-CD (Tenn. Crim. App., at Jackson, Sept. 26, 2007). As such, we conclude that the evidence presented was sufficient to establish each of the required elements of the offense beyond a reasonable doubt.

## II. Sentencing Issues

### A.    Excessive Sentence Based Upon Application and Weight Given to Enhancement and Mitigating Factors

Next, the defendant contends that the sentence imposed by the trial court is excessive. Specifically, he challenges the trial court's application of two enhancement factors. Additionally, he asserts that the court erred in determining that any enhancement factors found outweighed the applicable mitigating factors. When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169; *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008); *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). The burden is on the defendant to show that the sentencing was improper. T.C.A. §40-35-401, Sentencing Comm'n Cmts. If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.

In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114;

(f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

The defendant's criminal conduct, which is the subject of this appeal, occurred subsequent to the enactment of the 2005 Amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," a punishment sufficient "to prevent crime and promote respect for the law," and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]"

*Id*. (citations and footnote omitted). The 2005 Amendment further deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory and non-binding in the sentencing. *Id*. at 344. Under current sentencing law, the trial court is, nonetheless, required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id*. However, the trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id*. at 344. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increased the amount of discretion a trial court exercises when imposing a sentencing term. *Id*.

Nonetheless, to facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *Id*. at 343. If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is *de novo*. *Id*. at 345. However, error in the application of an enhancing factor or factors will not necessarily require modification of the sentence if the sentencing record reflects that the trial court considered the provisions of Tennessee Code Annotated section 40-35-210(b)(1)-(7) in determining the specific sentence length. Under these guidelines, we proceed to review the defendant's sentencing arguments.

The applicable sentencing range for a defendant convicted of a Class C felony and sentenced as a Range I offender is three to six years. T.C.A. § 40-35-112(c)(3) (2006). As previously noted, the trial court imposed the maximum sentence of six years. In determining the length of the sentence, the trial court applied two enhancement factors: (1) the defendant had a previous history of criminal convictions or criminal behavior; and (2) the personal injuries inflicted upon or the

amount of damage to the property sustained by or taken from the victim was particularly great. *See* T.C.A. § 40-35-114(1), (6) (2006). Additionally, the court determined one applicable mitigating factor, that being that the defendant, "although guilty of the crime, committed the offense under such unusual circumstances that [it is] unlikely that a sustained intent to violate the law motivated the criminal conduct." T.C.A. § 40-35-113 (11) (2006).

On appeal, the defendant contests the application of both enhancement factors. With regard to factor (1), he argues that the court erred in applying this factor because the prior conviction which the defendant had was stale, specifically a sixteen-year-old conviction for aggravated robbery. We reject the petitioner's argument that the factor was improperly applied. Regardless of the age of the prior conviction, the conviction remains as part of the defendant's prior record. Additionally, the record also reflects that the defendant had a prior conviction for driving on a suspended license, further supporting application of the factor.

With regard to factor (6), that the personal injuries inflicted were great, the defendant argues that this factor was misapplied because it was an element of the offense. He contends that in order to charge a defendant with aggravated assault, "there has to be a serious bodily injury committed; otherwise, the defendant will be charged with a simple assault." We disagree. Simple assault occurs when a person "intentionally, knowingly, or recklessly causes *bodily injury*" to another. T.C.A. § 39-12-101(a)(1) (emphasis added). Aggravated assault occurs when a person "intentionally or knowingly commits an assault . . . and (A) [c]auses serious bodily injury; *or* (B) [u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1)(A)-(B) (emphasis added). The aggravated assault statute is written in the disjunctive; thus, contrary to the defendant's argument, it is possible to commit an aggravated assault where no serious bodily injury exists if a deadly weapon is used.

While we agree with the defendant that an element of the offense cannot be used to enhance his sentence, in this case, we cannot conclude that one was. The defendant was indicted and convicted of committing aggravated assault by use of a deadly weapon. Thus, only proof of bodily injury, not serious bodily injury, was required to establish the charged crime. In *State v. Sean Imfeld*, this court has previously recognized that "serious bodily injury" is not an element of the offense as charged in this case. No. E2000-00094-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Feb. 27, 2001).

The *Imfeld* court went on to note that "proof of serious bodily injury will always constitute proof of particularly great injury," which supports application of enhancement factor (6). *Id.* (citing *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994)). "Serious bodily injury" means bodily injury which involves a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. *Id.* We agree with the trial court's conclusion that serious bodily injury was established in this case under two facets of the definition. The court noted that "it strains the imagination . . . [that hitting a victim in the head and] laying them out with an aluminum baseball bat . . . if that doesn't invoke a substantial risk of death, I, frankly don't know what would." We agree. The court also concluded that the victim suffered protracted and obvious disfigurement

based upon the thirty-seven stitches and the remaining scar, "a very sizeable, noticeable scar that [the court] could see from forty-five or fifty feet" away. We likewise agree that this is sufficient to establish serious bodily injury. Because the record supports the conclusion that serious bodily injury was established, we find no error in the court's application of the factor that the injuries suffered were particularly great.

Finally, the defendant contends that "the court erred in finding beyond a reasonable doubt that the aggravating factors outweighed the [defendant's] mitigating factors." In support of his argument, he relies upon the mitigating evidence presented that he was an ordained minister and a active community activist; that he renovates and builds homes for low income people; that he sponsors Little League football teams; and that he received a college degree following his prior release from prison.

The defendant's argument must fail, however, as the new sentencing act, under which he was sentenced, deleted appellate review of the weighing of enhancement and mitigating factors, as they were rendered merely advisory. *Carter*, 254 S.W.3d at 344. All the facts relied upon by the defendant were presented to the trial court, and the court, through its statements on the record, obviously considered such facts. If the record establishes that the court considered the advisory factors along with all the principles of sentencing, the trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id.* As such, this issue is without merit.

### B.     Full Probation

Next, the defendant contends that the trial court erred in denying his request for full probation. At the time the defendant committed the offense, a defendant who received a sentence of ten years or less was eligible for probation, subject to certain exceptions not applicable here. T.C.A. § 40-35-303(a) (2006). However, even though eligible, he is not automatically entitled to probation as a matter of law. T.C.A. § 40-35-303(b). Moreover, the burden is on the defendant to show that the denial of full probation was improper. *Id.*; *see also State v. Summers*, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing *Ashby*, 823 S.W.2d at 169); *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden of appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds by State v Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. *Id.* In determining one's suitability for full probation, the court may consider the circumstances of the offense, the defendant's potential or lack of potential for rehabilitation, whether full probation will unduly depreciate the seriousness of the offense, and whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. T.C.A. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (2006); *see also Bingham*, 910 S.W.2d at

456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Id.* (citing *Fletcher*, 805 S.W.2d at 788-89).

> In determining whether to grant or deny full probation, additional considerations include the defendant's criminal record; social history and present condition of the defendant, including his or her mental and physical conditions where appropriate; defendant's amenability to correction and general attitude, including behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and the best interests of both the defendant and the public.

*State v. Blackhurst*, 70 S.W.3d 88, 97 (Tenn. Crim. App. 2001) (citing *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995)).

Although deterrence is a factor to be considered, it will not alone support a denial of alternative sentencing. *Ashby*, 823 S.W.2d at 170. Trial courts are accorded significant latitude in determining whether deterrence is necessary and incarceration appropriately addresses that need. *Hooper*, 29 S.W.3d at 10. We will presume that a trial court's decision to incarcerate a defendant on the basis of a need for deterrence is correct if any reasonable person looking at the entire record could conclude that: (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole; and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes. *Id.* In making these determinations, a trial court is to consider: (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or the state as a whole; (2) whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior; (3) whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case; (4) whether the defendant was a member of a criminal enterprise or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests of convictions. *Id.* at 10-12. These factors are meant to serve only as a guide, and a court need not find that all of these factors are present before ordering incarceration based on a need to deter similar crimes. *State v. Edward Clay and Timothy B. Clay*, No. M2002-01319-CCA-R3-CD (Tenn. Crim. App., at Nashville, Apr. 29, 2003).

In ordering a sentence of split confinement in this case, the trial court made the following findings of fact:

> Looking at the probation criteria, the nature and circumstances of the criminal conduct involved, the defendant's potential or lack of potential for rehabilitation. You know, at first glance, you know, without the aggravated robbery, you would say,

of course he is; but, you know - but you get one major felony every ten years. I don't know - I don't know about his anger problem- it seems like he has one.

"Whether he's sentenced to full probation would unduly depreciate the seriousness of the offense." I mean, I think the average person on the street would think that if I hit this person in the back of the head or the front of the head with a baseball bat, I wonder what my odds [ ] of going to jail are. I mean, I think your average person would say, "You know, I would expect to serve at least a few days." You know, it's almost laughable. It's kind of comical, almost, to think that someone could think, "Well, I could whack this guy in the front of the head - crack his skull - give him thirty-seven stitches, and they're going to give me probation." You know. It's why the deterrent effect is so important.

You know, there's seven thousand aggravated assault in our city that same year - over 5000 the next year. What kind of message does that show that, "Hey, everybody, come to Division V of Criminal Court, and you'll get probation for whacking somebody with a baseball bat." I don't think that [ ] would be a very good deterrent effect, frankly; and weighing everything, I think [the defendant] should have known better than to do this. He was angry, and I don't believe that full probation would be appropriate in this case.

On appeal, the defendant contends that the trial court erred in relying upon "an unauthenticated brochure compiled by the Attorney General's Office of the statistical crimes committed during the 2005 year." He asserts that the brochure should not have been admitted because it "served no purpose other than to prejudice the trial court against the [defendant] by showing that the number of aggravated assaults in Shelby [C]ounty were on the rise and that there was a need to send a message to the public."

Although not specifically analyzing all the requisite concerns for denying full probation, after a review of the record, we conclude that the trial court did consider the facts and reached the proper conclusion that the defendant had failed to carry his burden of establishing his suitability for full probation. The trial court explicitly referenced the defendant's contributions to and work in the community for which he had been recognized. Nonetheless, in assessing the defendant's potential for rehabilitation, he noted that the defendant appeared to have anger issues and was incurring a major felony conviction every ten years. The court also, in multiple statements, indicated that it believed that the nature of circumstances of the offense were serious and especially violent. The court noted the severity of the defendant's injuries and specifically stated that, like the jury, it did not believe the defendant's claim of self-defense, noting that the defendant was much larger and younger than the victim. Moreover, a reading of the court's findings establishes that it concluded that allowing the defendant to serve his entire sentence on probation would depreciate the seriousness of the offense and would send the wrong message to other members of the community. We agree with these findings.

While the trial court did not explicitly analyze the five factors to determine if the need for deterrence supported a denial of full probation, the court obviously reached such a finding based upon its statements, and we agree that conclusion is supported by the record. With regard to factor (1), the increasing presence of aggravated assaults in the community, we conclude this factor weighs in favor for the need for deterrence. We reject the defendant's argument that the document submitted by the State should not have been relied upon. It was clearly an official publication, reflecting that there were several thousand aggravated assaults committed annually. Factor (2), that the conduct was the result of intentional, knowing, or reckless conduct also weighs in favor of the need for deterrence. The defendant, upon being informed of the break-in, drove to the victim's home, confronted him, and attacked him. After taking the victim back to the property, he, without provocation, swung a baseball at the victim's head. The record is void of any evidence with regard to factor (3), excessive publicity, or factor (4), a criminal enterprise; thus, these factors mitigate against the need for deterrence. However, factor (5), previous similar conduct, weighs in favor of the need for deterrence. The State presented evidence that the defendant, although not charged with a crime, had previously attacked and assaulted a man whom he believed had stolen a cell phone from him. After review, we conclude that the balancing of these factors supports the trial court's conclusion that the need for deterrence was present in this case. As such, we find no error in the court's denial of the defendant's request for a sentence of full probation.

## C.      Restitution

Finally, the defendant contends that the trial court erred in awarding $8800 in restitution directly to the victim without proof of his medical bills and lost wages. When a defendant challenges a trial court's restitution order, this court conducts a *de novo* review with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d); *State v. Johnson*, 968 S.W.2d 883, 884 (Tenn. Crim. App. 1997). A trial court, in conjunction with a sentence of confinement or probation, may order a defendant to make restitution to the victim of the offense. T.C.A. § 40-35-104(c)(2) (2006). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *Johnson*, 968 S.W.2d at 885 (citation omitted). The standards set forth in Tennessee Code Annotated section 40-35-304, which govern restitution in conjunction with probation, are applicable to restitution issues in cases involving total confinement. T.C.A. § 40-35-304(g) (2006). The statute indicates that the amount of restitution should be based on a victim's pecuniary loss. *See* T.C.A. § 40-35-304(b). Pecuniary loss includes:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

T.C.A. § 40-35-304(e). Special damages are those which are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence." *State v. Lewis*, 917 S.W.2d 251, 255 (Tenn. Crim. App. 1995).

It is unnecessary for the sentencing court to determine restitution in accordance with the strict rules of damages applied in civil cases. *Johnson*, 968 S.W.2d at 887. However, although the rules of damages are relaxed, they are not completely discarded. *State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). The sum of restitution ordered must be reasonable but does not have to mirror or equal the precise pecuniary loss. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994), *perm. app. denied* (Tenn. 1995). There is no set formula or method for determining the amount. *Johnson*, 969 S.W.2d at 886. The sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay or perform in determining the amount and method of payment. In determining the appropriate amount of restitution, a trial court must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay. *Bottoms*, 87 S.W.3d at 108; *see also* T.C.A. § 40-35-304(d).

A victim seeking restitution must present sufficient evidence to allow the trial court to make a reasonable, reliable determination as to the amount of the victim's losses. *Id.* General statements by a victim regarding the amount of his or her loss containing no explanation as to how the victim arrived at the amount are insufficient. *Smith*, 898 S.W.2d at 747. While a victim's testimony, standing alone, may be sufficient to establish special damages for the purposes of restitution, the victim should explain how he or she arrived at the amount of damages requested. Further documentation supporting the victim's testimony is helpful.

When ordering restitution, the trial court shall specify the amount of time for payment and may permit payment or performance of restitution in installments. T.C.A. § 40-35-304(c). However, the court may not establish a payment or performance schedule which extends beyond the maximum statutory term of probation supervision that could have been imposed for the offense. *Id*.

The defendant's entire argument with regard to this issue is as follows:

> The trial court erred in requiring that [the defendant] pay restitution in the amount of $8,800.00 directly to the victim, who was an admitted drug abuser. The trial court did not direct the [defendant] to pay damages to the Regional Medical Center, nor did the trial court even require proof that the victim had damages totaling $8800.00. The only thing that the trial judge said was, "Mr. Patterson, I expect you to pay The Med in full for what they are out." . . . The trial court did not require proof of the victim's lost wages or that the victim ever really worked a consistent job. The $8800.00 was just a number that the State threw out to the trial judge, and he agreed without question.

Initially, we note that the defendant has failed to cite to any law supporting his argument that the restitution ordered was improper. Pursuant to Tennessee Rule of Appellate Procedure 27, the issue could be deemed waived. Nonetheless, we elect review in the interest of justice.

Following review of the record, we conclude that the defendant's argument is without merit. Contrary to his assertion, the $8800 was not a random figure "thrown" out by the State. Included in the presentence report are medical bills totaling $7301.26, incurred by the victim as a result of the injuries caused by the defendant's assault. Likewise, the victim testified at the sentencing hearing that he was a self-employed electrician and that he had been unable to work for a period of six weeks due to his injuries. Upon questioning, he stated that he had lost $2500 in income during that period, including the job he was scheduled to perform the day of the assault. The defendant explained his estimation of the lost wages, and the trial court specifically stated that he found the victim to be a credible witness in this regard. *See State v. Charles R. Turner*, No. M2003-02064-CCA-R3-CD (Tenn. Crim. App., at Nashville, Dec. 1, 2004) (testimony of victim explaining how he arrived at figure for lost wages sufficient to support restitution award). The victim's medical bills and lost wages, both pecuniary losses incurred as a result of the defendant's assault, total $8801.26. Thus, we must conclude that the record supports the trial court's award of restitution in the amount of $8800.

Likewise, the defendant's argument that the trial court awarded the restitution to the defendant, an admitted drug user, without directing that he pay the medical bills is also without merit. The victim in the case is the person who incurred the losses as he is personally responsible for the medical bills incurred as a result of this assault. Thus, he is the proper person to receive that restitution. It is his responsibility to see that the medical bills are paid; that is not a matter for the court's direction. Nonetheless, the court informed the victim that he should forward the restitution received to the proper parties, thus, making the victim aware of what the restitution was awarded for.

Although not raised by the defendant on appeal, and notwithstanding that the amount of the restitution was supported by the evidence presented, the record is silent with regard to any finding by the trial court of the defendant's ability to pay the ordered restitution during the length of his sentence. The record establishes that the defendant is employed by corporations which deal with his construction of homes for the community, but no mention is made of his earnings. As this is a required finding prescribed by the statute, we must remand for a determination of the defendant's ability to pay the ordered restitution during the scheduled period. *See Ardie Mae Culbreath*, No. M2007-01157-CCA-R3-CD (Tenn. Crim. App. at Nashville, July 21, 2008).

**CONCLUSION**

Based upon the foregoing, the judgment of conviction and sentence imposed, with respect to length and manner of service, are affirmed.  However, with regard to the order of restitution, the case is remanded for a determination of the defendant's ability to pay.

_____
JOHN EVERETT WILLIAMS, JUDGE